# National Life Insurance Company of the United States of America, Appellant, *v.* Haines, et al.

*Corporations — Insurance company — Contracts — Purchase of stock of another insurance company—Adjustments—"Admitted assets"—"Nonadmitted assets"—Accounting—Bill in equity—Fraud —Mistake of facts—Warranty—Act of June 1, 1911, P. L. 567.*

1. "Admitted assets" of a casualty company are such investments as are authorized for such companies by the Act of June 1, 1911, P. L. 567, Sections 19 and 20, cash, and other items which may be regarded as the equivalent of cash. They are such assets as will be "admitted" by the insurance commissioner as legal investments of the capital and surplus of such company in determining solvency. Any other property or investment which it may hold are termed "nonadmitted assets." Due bills and unpaid checks, even though carried by the company as such, are "nonadmitted assets."

2. In a proceeding in equity for an accounting it appeared that complainant insurance company entered into a contract for the purchase of all the capital stock of an insurance company for which defendants were trustees; that the complainant-paid the trustees an amount based on the admitted assets of the company as shown by an examination made by the State insurance department as of April 25, 1912, such sum including an estimate of unpaid-losses; that when the unpaid losses were accurately ascertained it was found that they greatly exceeded the amount estimated in the contract; and that the agreement provided that from certain future payments to be made to the trustees by complainant deductions were to be made for loss by reason of the assets or net surplus based upon "admitted assets" being less than the contract estimate. Complainant averred damages exceeded payments due defendants. In stating an account, the court gave defendant credit for cash realized from certain due bills and checks turned over to complainant as cash and afterwards converted into cash, and also for certain sums charged in the books of the company at the time of settlement as loans to stockholders, which were shortly afterwards repaid. *Held,* no error.

3. In such case, however, it is error to refuse to allow the complainant to show, as an element of damage under the contract deductible from the subsequent payments, the actual amount of unpaid losses which had accrued as of the date of the purchase, and had been adjusted and paid, for the purpose of charging the de-

fendants with the difference between such actual amount, and the previous estimate thereof.

4. In such case, in the absence of a provision in the contract requiring notice to be given defendant before settlement of claims or payment of losses, no such notice is necessary; but fraud or lack of good faith in the adjustment of claims can be set up as a defense.

5. In the absence of a stipulation as to what was to be done in case the deficiency in assets should exceed the amount of the payments which were to be made by complainant to defendants, there can be no recovery, either on the ground of mutual mistake of fact, or that the contract amounted to a warranty on the part of defendants.

Argued October 17, 1916. Appeal, No. 143, Oct. T., 1916, by complainant, from decree of C. P. Allegheny Co., June T., 1914, No. 418, in equity, directing payment to defendants, on bill in equity for an accounting in case of National Life Insurance Company of the United States of America v. James B. Haines, Jr., Thomas P. Jones and Louis C. Sands, as Trustees for the Stockholders of the Pittsburgh Casualty Company, and others, stockholders of said corporation, individually. Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Reversed.

Bill in equity for accounting. Before CARPENTER, J.

The facts appear by the opinion of the Supreme Court.

The court below entered the following decree:

And now, to wit, July 8, 1916, this cause came on to be heard at this term upon the findings of fact and conclusions of law of the trial judge and exceptions ex parte plaintiff thereto and, upon consideration thereof, it is ordered, adjudged and decreed that the exceptions of the plaintiff be and the same are hereby overruled and dismissed.

And it is further ordered, adjudged and decreed that, it having been stipulated and agreed by counsel for the plaintiff and the defendants that the testimony upon the present record is sufficient upon which to base an ac-

counting, without a formal order or decree to that effect, such accounting is now had and it is determined and decreed that there is due and payable forthwith by the plaintiff, the National Life Insurance Company of the United States of America, to the defendants, James B. Haines, Jr., Thomas P. Jones and Louis C. Sands, trustees for the stockholders of the Pittsburgh Casualty Company, the sum of $8,618.89, the said sum to bear interest from the date of the entry of this decree.

And it is further ordered, adjudged and decreed that the costs in this case be paid by the plaintiff, one-half thereof to be charged to the above named defendants, trustees for the stockholders of the Pittsburgh Casualty Company, and deducted from the balance due of $8,618.89, as heretofore decreed to be payable by the plaintiff to the said defendants. (40)

Complainant appealed.

*Error assigned,* among others, was (40) the decree of the court.

*L. A. Stebbins,* with him *James A. Wakefield,* for appellant.—The contract contemplated that there should be a readjustment and restatement of the account subsequent to the initial payment. "Admitted assets" are assets in accordance with the Act of June 1, 1911, P. L. 567, regulating casualty insurance companies, and also agents' balances secured, reinsurances due from other companies and interest due and accrued upon securities owned, and cash.

Neither the unsecured loan to stockholders to purchase stock in order to fulfill the terms of sale, nor checks and due bills are admitted assets.

Certain money paid by complainants having been paid under a mistake of fact may be recovered back: Reed v. Horn, 143 Pa. 323; Girard Trust Co. v. Harrington, 23 Pa. Superior Ct. 615; Dotterer v. Scott, 29 Pa. Superior Ct. 553.

The contract may be regarded as embodying a warranty as to the net surplus based on admitted assets: Warren v. Philadelphia Coal Co., 83 Pa. 437; West Republic Mining Co. v. Jones & Laughlins, 108 Pa. 55; Wetherill v. Neilson, 20 Pa. 448.

*Thomas Patterson,* of *Patterson, Crawford, Miller & Arensberg,* with him *F. R. Stoner,* for appellees.

OPINION BY MR. JUSTICE POTTER, January 8, 1917:

This was a bill in equity to secure an accounting filed by the National Life Insurance Company of the United States of America, a corporation of the State of Illinois, against James B. Haines, Jr., Thomas P. Jones and Louis C. Sands, trustees for the stockholders of the Pittsburgh Casualty Company, and numerous stockholders of the latter company individually. It was averred in the bill that, on July 3, 1912, the complainant entered into a contract with the defendant trustees for the purchase of all the capital stock of the Pittsburgh Casualty Company, a Pennsylvania corporation, upon certain terms set forth in a written agreement, which was annexed to and made part of the bill. It was further averred that, pursuant to the contract, complainant paid to the trustees the sum of $120,205.24, which was based on the amount of the admitted assets of the company as shown by an examination made, as of April 25, 1912, by the Insurance Department of the State of Pennsylvania. This sum represented $100,000 capital, and $20,205.24 surplus, in the computation of which there was included unpaid losses estimated at $8,020.84. It was averred, however, that, in truth and fact, the net assets were $23,-935.70 less than the amount taken as the basis of payment. The difference was due largely to the fact that, when the unpaid losses could be accurately ascertained, it was found that they amounted to much more than the estimate. It was also provided in the agreement that complainant was to pay the trustees 25 per cent. of cer-

tain premiums that were to be collected during the first year after the transfer of the stock. This percentage amounted to $14,304.96. From these future payments it was stipulated that there might be deducted the damages, if any, sustained by reason of the assets or net surplus based upon admitted assets being less than the expectation. It was averred that the damages amounted to more than the payments due defendants for premiums, and a balance was due to plaintiff. The prayer of the bill was for an accounting, and for a decree directing payment of the amount claimed by plaintiff.

In the answer it was admitted that the allegations of the bill in regard to the contract and the amount of the consideration paid were correct, but it was denied that the net surplus of the company was less than that which was reported to the Pennsylvania Department of Insurance, and upon which the amount paid by the purchaser was based. Defendants joined in the prayer for an accounting.

The court below was of opinion that an account could readily be stated without a reference, and it adjudged and decreed that there was due from complainant to defendant trustees the sum of $8,618.89. Complainant has appealed, and its counsel contend that, in stating the account, the court below erred in charging complainant with the amount of certain due bills and unpaid checks, which were turned over in the settlement. It is argued that even though these were afterwards paid, yet at the time of settlement they were "nonadmitted" assets, which, under the terms of sale, were to be delivered to the purchaser, in addition to the admitted assets. A similar claim is made with respect to an account upon the books of the company, representing a temporary loan to two stockholders.

It is also alleged that the court below committed serious error in the exclusion of evidence tending to show that the liability for unpaid losses was in fact largely in excess of the amount at which they were estimated at

the date of settlement. Counsel for appellant further contend that, in case the deficit in assets is found to be in excess of the additional payments which were to be made to defendants, the complainant has the right to recover in this action, as against the fund now in the hands of defendants, the amount of such deficit.

It clearly appears from the article of agreement that complainant purchased the capital stock of the casualty company, but did not purchase the assets as such. The price to be paid was, however, based upon the expectation and belief, of both parties to the transaction, that the assets of the company would amount to a certain specified sum. The agreement recites that the parties expected and believed that "the assets" and "the net surplus based on admitted assets" were fully as much, and "the invested assets" were the same, as shown in the report of the company to the insurance commissioner as of date April 25, 1912. In its offer to purchase the capital stock, the complainant expressly stipulated that the assets should also include "all nonadmitted assets and the goodwill of the company." The evidence shows that "admitted assets" of a casualty company are such investments as are authorized for such companies by the Act of June 1, 1911, P. L. 567, Secs. 19, 20, also cash, and certain other items which may be regarded as equivalent to cash. They are such assets as will be "admitted" by the insurance commissioner as legal investments of the capital and surplus of such a company in determining solvency. Any other property or investments which it may hold are termed "nonadmitted assets." Due bills and unpaid checks, even though carried by the company as cash, are "nonadmitted assets." On the settlement in this case, certain due bills and checks were turned over to complainant, which, while they may technically have been nonadmitted assets, yet in fact were afterwards paid and converted into cash, with the exception of $268.04, for which credit was given by the court below. Counsel for appellant argue that, in addition to this

amount, defendants should be charged with a further sum of $908.98, which was actually paid to plaintiff, but which it contends represented at the time "nonadmitted assets," which the purchaser was entitled to receive under the terms of the offer to purchase, in addition to the admitted assets. In the stipulation for the satisfaction of damages, if any, resulting from changes in the condition of the company after the date of the report to the insurance commissioner, provision was made against shrinkage in net surplus based upon admitted assets, to a point less than was anticipated. It appears, however, that these due bills and checks were turned over to complainant as so much cash, and that they actually were converted into cash, so that complainant has suffered no loss therefrom. Its contention in this respect is, therefore, without substantial merit. The same may be said as to the item of $1,462.00, which was a temporary loan of cash made to two of the stockholders to enable them to purchase the stock of another shareholder who had refused to transfer his stock except for cash, and which had to be procured in order to comply with the terms of sale. At the date of settlement this amount was charged on the books of the company against two of the stockholders, but a few days later they returned the cash, and the account was balanced. Complainant contends that this account was at the time a "nonadmitted asset," and that defendants were not entitled to credit for it. Technically this may have been true at the date of the transfer, but it was clearly part of the "assets" of the company, and, as it was promptly converted into cash, defendants are entitled to credit for it as such.

The most serious question raised by this appeal is, with respect to the liability of the casualty company as of the date of sale upon outstanding claims and losses not at the time fully ascertained and liquidated. By the report to the insurance department, which was made the basis of the settlement, the liabilities for losses and claims outstanding, whether adjusted or in the process

of adjustment, were said to be $8,020.84. This was, of course, merely an estimate. In making up the statement of the financial condition of a casualty company, it is necessary to estimate unpaid losses, because it is not possible to know at any particular time, what liabilities have then been incurred. Some may not yet have been reported, and the limit of liability upon other claims may not yet have been defined. Naturally therefore, provision was made in the contract for a readjustment in accordance with the facts when the exact amount of the losses which had accrued at the particular date, could be accurately ascertained. The amount paid at the execution of the contract was, as herein stated, "a sum equal to the capital stock and net surplus based on admitted assets." The net surplus would, of course, vary with the amount of losses paid. The proposition to purchase was contingent upon the assets being as much as the amount shown in the report, and the contract provided that, if the amount was less, the difference was to be deducted from future payments to be made. The report to the insurance department was made as of April 25, 1912, while the purchase was consummated upon July 3, 1912. Counsel for appellee suggest that the meaning of the contract was, that changes in the condition of the company between those dates, which might affect the net surplus, were to be taken into account, and the shrinkage, if any, as shown by the later statement, might be deducted from future payments. Such a construction would be wholly inadequate to meet the obvious purpose of the proposition. It would be merely to substitute an estimate of one date for that of another somewhat earlier. What was evidently intended, was to substitute certainty for surmise, when it could reasonably be done, and replace a mere estimate, with a statement of the actual losses which had been incurred up to the date of the purchase. To give the contract any other construction would be to practically nullify the provision that the damages sustained by the shrinkage of assets or net sur-

plus, below the expected amount, should be deducted from future payments to be made. It was contended on behalf of complainant that when it was able to ascertain the actual amount of the unpaid losses which had accrued as of the date of the purchase, these losses largely exceeded the amount at which they had been estimated, and that this difference, in accordance with the real meaning and intent of the agreement, is chargeable to defendants. The court below refused to allow this charge, but based the refusal chiefly upon the ground that when the officers then in charge of the affairs of the casualty company adjusted these claims and paid these losses, no notice of the action was given to defendants. He rejected all evidence offered as to the amount of the payments made on claims for losses occurring before the date of the settlement and transfer of the stock, and permitted no proof to be made of the existence or validity of claims so paid. The evidence of an expert, who was asked to testify from the proofs of loss whether the payments were proper and such as it had been the practice of this company, and was the custom of other casualty companies to make upon such proofs being rendered to them, was offered, but was rejected. It must be remembered that the purchaser took the company as it was, and, of course, was bound to carry out its contracts with the policyholders. The purchase was made upon the distinct understanding that the company had a net surplus of a specified amount, and that, if the net surplus proved to be less than that amount, the difference was to be made good in the manner, and to the extent, provided for in the agreement. The offer was to show that when the company was turned over to the purchaser, it was found to be subject to actual claims for losses against it, which, when adjusted and paid, reduced the net surplus by a large sum. It is difficult to see how complainant could prove these facts, except by means of the proofs of loss which constituted the basis of its adjustments, and of the payments which it was actually obliged to make in

pursuance of such adjustments. The offer was to show that these settlements were made by the company in the regular course of business, and for the purposes of this case the proofs of loss and the adjustments were prima facie evidence of the validity of the claims. Especially was this true in the case of such proofs as had been rendered before July 3, 1912, and which were turned over with the other papers of the company to the purchaser of the stock.

As to the suggestion that notice should have been given to defendants before the settlement of claims, and the payment of losses, we can find nothing in the agreement of sale requiring it. The claims were paid in conducting the business of the casualty company. They were adjusted and paid, so far as the record shows, in entire good faith, and the defendants are bound by such payments to the extent for which it was provided in the agreement that they should be used as an offset, unless they can show that the settlements were fraudulent, or were made with the intention of basing thereon an unjust claim against defendants. There is no allegation of that kind in the case. In the offer of proof made by complainant, it is stated that the claims paid were over 300 in number, ranging from $1.50 to $3,268.75, but most of them for small amounts. If it had been intended that all these claims should be submitted to defendants to be approved by them before payment was made, instead of passing them in the usual way, and through the regular adjusters of the company, the parties to the sale of the stock would certainly have made provision for it in the agreement. We think the court below erred in rejecting evidence of the adjustments based on the proofs of loss, and evidence of the payments made pursuant to the contracts of insurance outstanding for legitimate claims which had accrued at the date of the purchase. And also in holding that complainant was bound to submit each claim to defendants before adjusting and paying it, in order to hold them to their agreement as to making

good any deficiency in the net surplus of the company caused by such payment. Defendants will, of course, be at liberty to question the good faith of any adjustment, if they can produce evidence to sustain the charge.

It is provided in the contract that the damages sustained by complainant by reason of the assets or net surplus based on admitted assets being less than the expectation and belief of the parties, shall be deducted from any future payments thereafter to be made by complainant to the stockholders or their trustees on account of premiums collected during the first year after the sale of the company. But it does not appear that there was any stipulation as to what should be done, in case the deficiency in the assets should exceed the amount of the payments which were to be made by complainant to defendants. Counsel for appellant contend, however, that recovery may be had upon the ground that there was a mutual mistake of fact, and, further, that the contract amounted to a warranty upon the part of defendants. It cannot be said with accuracy that there was a mistake of fact. The contract shows that both parties recognized a possibility that their expectation as to the amount of the net surplus might not be well founded, and they provided for a method of adjusting matters, if events showed it was not. Nor can one be held to warrant the truth of a statement, when he merely asserts his belief in it, and his expectation that it will prove to be true. Within the limits of the amount of future payments on account of premiums which were to be made by complainant, it was agreed that any deficiency of assets was to be set off, and applied thereon. But beyond this, the contract does not go. Evidently neither party contemplated the probability of a deficiency greater than the amount of defendants' share of the future premiums, and no provision for that contingency was made. The accounting must be made in accordance with the terms of the contract. The question, however, of complainant's right to recover for the amount of a deficiency in assets greater than the amount

due defendants on account of additional premiums, does not actually arise upon this record. The court below has not considered it, and additional evidence and findings of fact would be necessary, in any event, before the question would arise.

We agree with the contention of counsel for appellant that evidence of the existence and payment of claims and losses to which the casualty company was liable at the date of the sale, in excess of the sum reported by the company to the insurance commissioner, was admissible under the pleadings. Both parties asked for an accounting, and the court awarded it. In order to state the account properly, all the transactions between the parties growing legitimately out of the contract, and the facts bearing upon them, should be taken into consideration.

The fortieth assignment of error is specifically sustained, and without referring to the numerous other assignments in detail, we sustain such of them as specify rulings of the court below which are not in harmony with the views herein expressed.

The decree of the court below is reversed, and the record is remitted for further proceedings in accordance with this opinion. The costs of this appeal to be borne by appellees.