387 A.2d 647

COMMONWEALTH of Pennsylvania, INSURANCE
DEPARTMENT and Herbert S. Denenberg,
Insurance Commissioner, Appellants,

v.

SAFEGUARD MUTUAL INSURANCE COMPANY (two cases).

Supreme Court of Pennsylvania.

Argued May 4, 1976.

Decided April 28, 1978.

594

Roger C. Peterman, Andrew F. Giffin, Asst. Attys. Gen., Gerald Gornish, Deputy Atty. Gen., for appellant at No. 12 and appellee at No. 14.

Malcolm H. Waldron, Jr., Pittsburgh, for appellant at No. 14 and appellee at No. 12.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

O'BRIEN, Justice.

Safeguard Mutual Insurance Company (Safeguard), is a domestic mutual fire insurance company,[1] writ-

1. A mutual insurance company is owned by its policyholders, who function as the insurers as well as the insured. There are no stockholders. It is distinguished from a stock company, which is owned by stockholders. See *Com. ex rel. Chidsey v. Keystone Mut. Cas. Co.*, 366 Pa. 149, 76 A.2d 867 (1950).

ing assessable policies.[2] The Commonwealth of Pennsylvania, Department of Insurance (Department), contends that Safeguard has been operating in violation of the Insurance Department Act, Act of May 17, 1921, P.L. 789, § 1, 40 P.S. § 1, et seq., and as such is in an unsound financial condition that jeopardizes the interests of its policyholders, creditors and the public. It has on that basis made attempts to liquidate the company. The first time the Department took action against Safeguard on these grounds, the company was suspended from doing business in April, 1967, by order of the Insurance Commissioner, pursuant to the Insurance Department Act, *supra.* The suspension was later overturned. See *Commonwealth v. Safeguard,* 91 Dauphin 305 (Dauphin County Court, sitting at Commonwealth Docket) (1970).

The present litigation began after Safeguard filed a quarterly statement with the Department on June 20, 1973. The report did not satisfy the Department that Safeguard was solvent. The Department, therefore, audited the company pursuant to the Insurance Department Act, *supra.* The Department then conducted a formal hearing, after which the Insurance Commissioner ordered Safeguard suspended and petitioned in Commonwealth Court for its liquidation, pursuant to 40 P.S. § 202.

Commonwealth Court was satisfied that Safeguard was neither insolvent nor in a hazardous financial condition and overturned the suspension order. *Pa. Insur. Dept. v. Safeguard Mtl.,* 18 Pa.Cmwlth. 195, 336 A.2d 674 (1975). The Department appeals. Safeguard cross-appeals on those points on which the rulings of the Commonwealth Court were adverse to it.

The dispute of Safeguard's financial condition is based on the parties' conflicting views as to how the company's assets and liabilities are to be determined. There are several items that Safeguard would count as assets which the Department would disallow. Safeguard also disputes the Department's

2. An assessable policy is one under which the policyholder may be assessed to meet the insurer's liabilities.

contention that Safeguard is required to maintain certain reserves and count them as liabilities. If the Department's view is accepted, Safeguard's liabilities would exceed its assets and render it insolvent. The dispute is centered on the interpretation of the Insurance Department Act, *supra.*

In its statement to the Department, Safeguard reported that it had assets of $3,802,864.65 and liabilities of $1,766,-183.09, giving it a surplus of $2,036,681.56. The Department's accounting would give Safeguard assets of $1,864,-847.83 and liabilities of $2,390,247.24, meaning that Safeguard would have a deficiency of $525,399.41. According to the Department, the assets improperly claimed by Safeguard are as follows: A $29,320.57 overstatement of the value of certain United States treasury bonds, a $220,347.79 debenture issued by the C. M. Clark Insurance Agency, Inc., $105,846.23 in accounts receivable from the Clark Agency, $103,280.34 in stock, $138,131.64 in mortgages, $682,051.18 in real estate (offset by $4,000 in accrued real estate taxes which Safeguard owes only if it is allowed to claim the property as an asset), $27,847.91 in accrued interest, dividends, and real estate income, and $638,765.05 claimed to be recoverable from the Commonwealth as the cost incurred by Safeguard in sustaining its license after the 1967 suspension. The Department would add the following liabilities to those admitted to by Safeguard: $110,588.95 in unpaid premium taxes and $530,705.63 as a reserve for unearned premiums. The Department found that other assets were understated by $7,573.89 and other liabilities were overstated by $13,-230.34. We will discuss those items that were adjudicated by the Commonwealth Court and are now before us.

## I. UNEARNED PREMIUM RESERVES ·

█ The first issue we will discuss is whether Safeguard is required to maintain an unearned premium reserve as a liability. When an insurer collects a premium on a policy before its expiration, part of the premium is unearned, i. e., the part collected for that period of time that has not elapsed. If a policy is cancelled before expiration, the

insurer must refund the unearned premium. The purpose of an unearned premium reserve is to guarantee that money will be available for any such required refund. The Insurance Department Act requires the maintenance of such a reserve, 40 P.S. § 91, but exempts certain companies, 40 P.S. § 917. The exemption section states in relevant part as follows:

". . . Except when cash premiums are payable in advance, the provisions relating to unearned premium reserve shall *not* apply to policies issued by a *domestic mutual fire insurance company* which policies set forth therein, or in the promissory note attached thereto, a *limited or unlimited liability to assessment.*" (Emphasis added.)

It is not disputed that Safeguard is a domestic mutual fire insurance company. The record shows that its policies are now subject to assessment. It also shows that Safeguard's premiums were not payable in advance. An examiner for the Department testified that he had examined Safeguard's books and found that it did not receive premiums in advance. We find that Safeguard meets the requirements for exemption and it need not maintain an unearned premium reserve.

Safeguard's exemption is not defeated by either of two provisions of the act cited by the Department. The Department argues that because Safeguard sells casualty insurance in addition to fire insurance, it is required to maintain an unearned premium reserve under 40 P.S. § 382(f), which allows domestic mutual fire insurers to handle casualty insurance "upon compliance with all of the financial and other requirements . . . [of] the laws of this Commonwealth for . . . casualty insurance companies transacting such . . . insurance." The requirements imposed on Safeguard by this section do not include maintenance of an unearned premium reserve. In *Bunker Hill Mut. Ins. Co. v. Leslie,* 382 Pa. 356, 115 A.2d 378 (1955), we found that the act required a mutual insurer to maintain reserves on nonassessable policies. All Safeguard's policies

now being assessable, it need not maintain an unearned premium reserve.

■ We also reject the Department's claim that the Commissioner may require reserves at his discretion under 40 P.S. § 115. That section gives the Commissioner the power to require liability or compensation loss reserves at his discretion when he deems it necessary to cover claims. It does not apply to unearned premium reserves, which the Commissioner has no statutory discretion to require.

## II. DETERMINATION OF ASSETS

■ We will next determine what items Safeguard may count as assets. The Department contends that Safeguard holds certain assets it is not authorized to hold under the act, which limits the permissible scope of investment by insurers. The Department would classify them as nonadmitted assets, i. e. assets not to be counted in determining solvency. The act contains provisions stating what assets an insurer may and may not hold, but does not say how unauthorized assets are to be treated in determining solvency. We approved the treatment of unauthorized assets as nonadmitted in *National L. Ins. Co. of U.S.A. v. Haines,* 255 Pa. 599, 100 A. 517 (1917). That case was based on the Act of June 1, 1911, P.L. 567, which has been repealed. The 1911 Act was similar to the present act in that it stated what assets were authorized and unauthorized, §§ 16–18 of the 1911 Act, but did not state how unauthorized assets were to be treated in determining solvency. We hold that unauthorized assets under the present act are to be treated as nonadmitted. This is a reasonable interpretation to give effect to the provisions on authorized assets. Having so held, we must determine whether Safeguard's questioned assets are authorized.

The assets that the Department claims should be nonadmitted include certain shares of stock. There is a dispute as to whether the act allows Safeguard to hold such stock, which Commonwealth Court resolved in favor of Safeguard. Investment by mutual insurers is governed by 40 P.S. § 912, which provides as follows:

"No domestic mutual insurance company other than a mutual life insurance company shall invest any of its assets except in accordance with the laws of this Commonwealth relating to the investment of the capital and surplus of domestic stock insurance companies authorized to transact the same class or classes of insurance, and in accordance with the following provisions:

"(1) *A domestic mutual insurance company,* other than a mutual life insurance company, *that writes assessable policies, shall invest its assets only in accordance with the laws of this Commonwealth relating to the investment of the capital of domestic stock insurance companies authorized to transact the same class or classes of insurance.*

"(2) *A domestic mutual insurance company,* other than a mutual life insurance company, *that writes non-assessable policies,* shall invest its assets in accordance with the laws of this Commonwealth relating to the investment of the capital of domestic stock insurance companies authorized to transact the same class or classes of insurance, and *may invest any of its excess over and above an amount equal to the minimum capital requirements of such stock companies in accordance with the laws of this Commonwealth relating to the investment of the surplus of domestic stock insurance companies authorized to transact the same class or classes of insurance.*" (Emphasis added.)

Safeguard writes fire and casualty insurance and is, therefore, subject to the investment regulations applicable to stock fire and casualty insurers. The relevant regulations are similar for both types of insurance, although they are contained in different sections of the act. Investments of stock fire insurers are regulated by 40 P.S. §§ 652 and 653. Those of stock casualty insurers are regulated by §§ 722 and 723. The securities in which capital may be invested are enumerated and do not include common stock, §§ 652, 722. Surplus funds may be invested in "stock . . . of any solvent corporation. . . ." §§ 653, 723. Thus, a mutual insurer may invest in stock *only if it writes nonassessable*

*policies* and has funds in excess of the minimum capital requirement for a stock company writing similar insurance. The minimum capital requirement for a nonassessable stock fire and casualty insurer is $200,000, 40 P.S. § 386.

It is not disputed that when Safeguard purchased the stock in question, its policies were nonassessable, meaning that policyholders could not be assessed to cover liabilities.[3] It is also not disputed that it was purchased with funds in excess of required capital. The purchase was, therefore, legal. Safeguard subsequently began writing assessable policies and continues to do so. The question before us is whether it may hold the stock after making such a change. We hold that it may not.

The applicable statutory provision requiring divestiture is § 8 of the Amendatory Act of November 27, 1968, P.L. 1118, No. 349, which revised § 912 to its present form. The section formerly read:

> "No domestic mutual insurance company other than a mutual life company shall invest any of its assets except in accordance with the laws of this Commonwealth relating to the investment of assets of domestic stock insurance companies transacting the same kinds of insurance."

The change limits the investments that were formerly permissible for assessable companies. The above cited section of the Amendatory Act provided that:

> "Mutual insurance companies existing on the date of this Act shall comply with the investment requirements of this Act *within three years from the effective date hereof.*" (Emphasis added.)

Safeguard's policies were nonassessable at the time of the amendment. The clear statutory language of § 8 of the 1968 Amendments requires that mutual insurance companies

---

**3.** The record indicates that after Safeguard's acquisition of the challenged assets it stopped writing nonassessable and began writing assessable policies. It did so following a report of the insurance commissioner in March, 1971 pursuant to an examination of Safeguard conducted in December, 1970. The commissioner said that he would suspend Safeguard if it did not make its policies assessable.

in existence on November 27, 1968, the effective date of the Act, comply with the investment requirements of this Act by November 27, 1971, three years after the effective date. Under § 912(1) and (2) of the Insurance Act, supra. There are two different scopes of investment for mutual non-life assessable companies, e. g. § 912(1) and mutual non-life non-assessable insurance companies, e. g. § 912(2).

We believe that the clear language of § 8 of the Amendment continues this dichotomy as to scope of investments. Section 8 is a three-year grace period for mutual non-life insurance companies to comply with the new investment requirements established by the 1968 Act for the respective class of companies, i. e. mutual non-life assessable or mutual non-life non-assessable. We find the requirements of § 8 to be applicable to Safeguard. Consequently, its holding of stock after November 27, 1971 was improper. The stock will not be admitted as an asset.

█ Another asset that the Department would not admit is a mortgage on a 35.3 acre tract of land in Muhlenberg Township, Berks County, valued at $128,000. The act allows Safeguard to invest in "loans upon improved and unencumbered real estate." §§ 652, 722. The Department argues that the tract is unimproved because there is no structure on it. That is not required. The tract has electricity and water and sewer service are readily available. The land has been cleared for development. The Commonwealth Court found that under such circumstances, the property can be considered improved for purposes of the Act, since it is readily marketable at an ascertained value. We agree. The mortgage is adequately secured so as to guarantee return of investment. The insurer is protected against the danger that the act is intended to deal with. The mortgage will be admitted as an asset.

█ Safeguard holds two other mortgages on real estate, one of which the Department would classify as nonadmitted in its entirety, and the other as partially nonadmitted because of defaults in repayment of the mortgages and tax delinquencies on the properties. The Department argues

that in view of such conditions, the property is not unencumbered and, therefore, not within the permissible scope of investment. The properties in question were not encumbered when Safeguard took mortgages on them. The investments were lawful when made. That led the Commonwealth Court to conclude that Safeguard could lawfully continue to hold the mortgages. We do not agree. The encumbrances on the mortgages take them out of the permissible scope of investment. The fact that they were lawfully acquired does not allow Safeguard to hold them after the change in conditions. The amount in dispute is $10,131.64. This amount is to be deducted from Safeguard's admitted assets.

The Department also would not admit a certain debenture held by Safeguard. The debenture was issued by the C. M. Clark Insurance Agency, a corporation with which Safeguard maintains a relationship. Again, the Department's argument is based on an allegation of impermissible investment. We find the allegation to be well founded. The debenture was acquired while Safeguard was writing nonassessable policies. While it was writing such policies, Safeguard could invest in "evidence of indebtedness of any solvent corporation." 40 P.S. §§ 653, 723. It may no longer do so because of the 1968 Amendment, *supra*. As we said above, Safeguard may not hold an investment that was lawful when made but became impermissible after the amendment. Contrary to the Commonwealth Court's holding, the debenture will not be admitted as an asset.

Another reason given by the Department for not admitting the debenture was that it considered Clark insolvent. Commonwealth Court properly rejected the Department's finding that certain other certificates of indebtedness issued by Clark constituted a liability. They should not be counted as such because they are payable only from surplus funds. Clark is solvent under this assessment of its liabilities. We have mooted that question as far as the debenture is concerned, but it has a bearing on another disputed asset, i. e. an account receivable from Clark held by Safeguard,

based on shared expenses at the business premises which the two companies jointly occupy. This is another asset which the Department would not admit because of Clark's alleged insolvency, but which must be admitted under our holding.

## III. SAFEGUARD'S CROSS-APPEAL

 The remaining issues to be dealt with are those raised by Safeguard in its cross-appeal. One concerns a requirement that insurers maintain reserves for outstanding losses to insure the availability of funds to cover the losses. Safeguard disputes the finding that it must adhere to the requirement. The act imposes the requirement on casualty insurers, 40 P.S. § 112. It is similarly imposed on mutual insurers other than life insurers who handle casualty insurance, 40 P.S. § 917. The latter section does not exempt issuers of assessable policies from this requirement as it does from the unearned premium reserve requirement, nor does any other provision provide an exemption. Safeguard was properly required to maintain a loss reserve. The Department has stated that it is unable to determine the amount of Safeguard's liabilities under this requirement. It therefore did not take it into account in computing Safeguard's liabilities. The Commonwealth Court found that Safeguard maintained certain reserves that satisfied the requirement. We accept this finding and will not impose any additional liability on Safeguard.

 The Commonwealth Court did not allow all of the items claimed by Safeguard as assets. One disallowed item is an interest Safeguard claims to have in a building at 1321 Arch Street in Philadelphia, two floors of which it occupies as business premises. The Clark Agency, not Safeguard, is the title holder of record. Safeguard bases its claim on an agreement that allows it to consider itself the owner, but that is insufficient for marketable title. The disallowance was proper.

 Safeguard also claimed as an asset the cost of sustaining its license after its 1967 suspension. It did so

because it considered the Commonwealth liable for these expenses. It has partially offset them by withholding certain taxes. In Safeguard's view we should increase its assets by $638,765.05, the amount it claims to have expended and not recouped by withholding taxes, and reduce its liabilities by the amount of the unpaid taxes, which is $110,588.95. We reject this view. Safeguard has not brought any action against the Commonwealth for damages, nor has the Commonwealth brought any action to collect the unpaid taxes. Consequently, there has been no judicial determination of the merits of Safeguard's claim nor is the question now before us. Safeguard's rights not having been established, the claim will not be considered an asset for the purposes of determining solvency. At best Safeguard has an unliquidated claim for damages. The claim does not represent funds that are now or will in the near future be available to pay debts. See *In re Bichel Optical Laboratories, Inc.*, 299 F.Supp. 545 (D.Minn., 1969).

The Commonwealth Court's decision would give Safeguard assets of $2,435,533.66 and liabilities of $1,859,541.61, yielding a surplus of $575,992.05. However, we disallowed the following assets which Commonwealth Court admitted: Clark debenture, $220,347.79; stock, $103,280.34; and mortgages, $10,131.64. Even disallowing these items, Safeguard still has a surplus of $242,322.28. Safeguard is still left with a surplus of assets over liabilities that renders it solvent. It was, therefore, not proper to suspend Safeguard, and the Department's order was properly vacated.

The order of the Commonwealth Court is affirmed as modified.

JONES, former C. J., took no part in the consideration or decision of this case.

POMEROY, NIX and MANDERINO, JJ., concur in the result.

ROBERTS, J., files a dissenting opinion in which EAGEN, C. J., joins.

ROBERTS, Justice, dissenting.

I agree that Safeguard Mutual Insurance Company (Safeguard) should have divested itself of securities and mortgages which, due to changed business circumstances,[1] it became illegal for Safeguard to hold. I also agree that Safeguard's cross-appeal is meritless.

However, I cannot agree with the majority that Safeguard should be exempted from maintaining an unearned premium reserve solely because it does not collect any "cash premiums payable in advance." See Act of August 23, 1961, P.L. 1090, § 1, 40 P.S. § 917 (1971).[2] Safeguard does not require payment of premiums before beginning to provide coverage under its policies. Safeguard does, however, collect premiums during the policy period in advance of much

1. The securities became impermissible holdings when Safeguard began writing assessable policies. See Insurance Company Act, Act of May 17, 1921, P.L. 789, §§ 802, 517, 602, as amended, 40 P.S. §§ 912, 652, 722 (1971 & Supp.1977). The mortgages became impermissible when they went into default. See id. These investments should therefore have been properly divested.

2. The applicable version of this section (since amended) reads:
 "§ 917. Reserves
 A mutual insurance company, other than a mutual life company, shall maintain unearned premium and other reserves separately, for each kind of insurance, upon the same basis as that required of domestic stock insurance companies transacting the same kind of insurance, except that the Insurance Commissioner may, by written order, fix a different basis of reserve for losses and claims in workmen's compensation insurance. Any reserve for losses or claims based upon the premium income shall be computed upon the net premium income, after deducting any so-called dividend or premium returned or credited to the member. Except when case premiums are payable in advance, the provisions relating to unearned premium reserve shall not apply to policies issued by a domestic mutual fire insurance company which policies set forth therein, or in the promissory note attached thereto, a limited or unlimited liability to assessment.
 Such companies shall accumulate such reserves not later than December 31, 1961."
 Neither party has raised the question whether the amendment to this section should affect a determination of insolvency made prior to its passage.

of the coverage for which those premiums are paid.[3] The majority concludes that Safeguard is exempt from carrying unearned premium reserve as a liability as required by 40 P.S. § 91. I do not agree.

There are two reasons for requiring an insurance company to treat an unearned premium reserve as a liability. First, if a policyholder cancels the policy during its effective period, funds must be available to refund a pro rata share of the premium paid. Second, because losses generally occur throughout the policy period, an insurance company must maintain funds, such as premium reserves, to cover potential losses.[4]

The majority's interpretation of 40 P.S. § 917 ignores these considerations. There is no dispute that Safeguard receives most of its premiums before they are earned. Safeguard, like many insurance companies, does not demand full payment of premiums before providing coverage. Such payment will typically cover the entire policy period, but will be made soon after coverage begins. Therefore Safeguard receives most premiums "in advance" of the time it will earn them, but must keep these funds available to satisfy losses or cancellations of policies. It must therefore be concluded

3. It is common insurance practice to begin coverage shortly before collecting the policy premium.

 The majority asserts that we must accept the Commonwealth Court's determination that Safeguard does not collect premiums paid in advance as a finding of fact supported by the record. The Commonwealth Court's conclusion, however, is not one of fact, but is an erroneous legal interpretation of "cash premiums paid in advance," which we are free to correct.

4. For example, an insurance company writing 100 one year policies on January first, charging $10 premium for each, collects total premium income of $1000. In January, if one policyholder suffers a $50 loss, his claim will be settled, leaving the company $950 on hand. This fund cannot be considered an unencumbered asset, however, because the company must have funds available to pay later losses or policy cancellation refunds. Maintaining an unearned premium reserve helps insure the availability of such funds. Compare 40 P.S. § 91 ("Computation of unearned premium liability") with id. § 92 ("Computation of reserves against unpaid losses . . .") (another device for insuring the availability of funds to pay losses).

that Safeguard receives "cash premiums payable in advance" and is ineligible for the exemption in 40 P.S. § 917 from maintaining an unearned premium reserve as defined in id. § 91.[5]

The majority's distinction between premiums payable before any coverage is provided, which it says are "paid in advance," and premiums payable shortly after the policy period begins, in advance of most coverage, which the majority says are not paid in advance, is unjustified. In both instances, policyholders pay substantial premiums for future coverage. In both instances, the insurer must maintain funds to satisfy future losses and cancellations of policies. There is no reason to distinguish between these two modes of collecting premiums by saying that one is collection "in advance" and the other is not. Sections 91 and 917 are designed to protect against the problems which can arise when a company holds substantial premiums collected in advance of coverage. The majority's reading of these sections frustrates this statutory protection for policyholders.

Accordingly, I dissent and would vacate the order and remand the case to the Insurance Department for further proceedings.

EAGEN, C. J., joins in this dissenting opinion.

5. One type of domestic mutual fire insurance company which might qualify for this exemption is the "post-assessment mutual" insurance company. It calculates and collects most of its premiums after the policy period has elapsed, receiving from policyholders enough premium to cover accrued losses. This sort of company holds no unearned premium, and therefore need not maintain an unearned premium reserve.