**STATE BOARD OF INSURANCE et al.,
Petitioners,**

v.

**PETROLEUM CASUALTY COMPANY,
Respondent.**

No. B–1504.

Supreme Court of Texas.

Nov. 12, 1969.

———◆———

Crawford C. Martin, Atty. Gen., C. Fielding Early, Asst. Atty. Gen., Austin, for petitioner.

Frank Heard, Jr., Houston, McGinnis, Lochridge, Kilgore, Byfield, Hunter & Wilson, Lloyd Lochridge, Austin, for respondent.

STEAKLEY, Justice.

The problem here is whether the investment by Petroleum Casualty Company, Respondent, of $454,268.37 in United States Treasury bills constitutes an investment in Texas securities as contemplated by Article 7064,[1] entitling Respondent to claim, as to such investment, the tax reducing provisions of the statute in the payment of taxes on gross premiums collected during the year 1965. Respondent sued to recover taxes paid under protest to the extent of an alleged overpayment resulting from the refusal of the State Board of Insurance to recognize the Treasury bills as Texas securities. The trial court was of the opinion that the bills were not Texas securities and entered a take-nothing judgment against Respondent. The Court of Civil Appeals held otherwise and rendered judgment that Respondent recover the overpayments paid under protest. 439 S.W.2d 435. We agree with the trial court.

Article 7064 imposes an annual tax on the gross premiums collected by certain classes of insurance companies, of which Respondent is one. The tax rate is determined by a formula which compares the investments of the company in Texas securities with investments in the similar securities of another state in which it does business. *The tax is reduced by investments in Texas securities*, which are defined by the statute as follows:

"For the purposes of this Act, Texas securities are defined as

"(1) real estate *in this State*;

"(2) bonds of the State of *Texas*;

"(3) bonds or interest bearing warrants of any county, city, town, school district or *any municipality or subdivision thereof* which is now or may hereafter be constituted or organized and authorized to issue bonds or warrants under the Constitution and laws of this State;

"(4) notes or bonds secured by mortgage or trust deed *on property in this State* insured by the Federal Housing Administrator;

"(5) the cash deposits in regularly established national or state banks or trust companies *in this State* on the basis of average monthly balances throughout the calendar year;

"(6) that percentage of such insurance company's investments in the bonds of the United States of America, that its Texas reserves for the unearned premiums and loss reserves as may be required by the Board of Insurance Commissioners, are of its total reserves; but this provision shall apply only to United States Government bonds purchased between December 8, 1941, and the termination of the war in which the United States is now engaged;

"(7) *in any other property in this State in which by law such insurance carriers may invest their funds.*"

(Subdivision numbering and italics have been added.)

It is stipulated that the legal and commercial domicile of Respondent is in Texas; that the United States Treasury bills in question were purchased in Texas from a Federal Reserve Bank and are payable to the bearer upon presentation to any Federal Reserve Bank; that the bills were held by Respondent in Texas; and that some of the bills were at times forwarded to the Treasurer of the State for deposit with the Commissioner of Insurance in compliance with statutory requirements not relevant here.

U. S. Treasury bills are not specifically included in the definition of Texas securities in Article 7064. The problem is whether this type of investment is nevertheless a tax reducing Texas security under the omnibus clause of the definition which qualifies investments "in any other property in this State in which by law such insurance carriers may invest their funds."

---

1. The reference is to Vernon's Annotated Texas Civil Statutes.

The question may be stated even more narrowly; i. e., whether the bills constitute "property in this State" since it is agreed that insurance companies subject to the payment of a gross premiums tax are permitted by other statutes to invest their funds in this character of security. Respondent forcefully urges that the controlling question is whether the Treasury bills in question were located "in this State"; it argues that the bills are a species of intangible property, the situs of which is in Texas under the undisputed facts, and that this should end the matter. This was the view of the Court of Civil Appeals and there is much merit in this approach; however, the omnibus clause is not clear of ambiguity and there are additional, and, we think, controlling considerations to be weighed in construing its meaning and effect.

Article 7064 has the twofold statutory purpose of raising revenue and promoting investments in Texas properties. To these ends the statute imposes an annual tax upon gross premium receipts of specified insurance companies at a maximum rate of 3.85%, which rate is subject to reduction by application of a formula comparing the total investments of the company in Texas securities with its investments in similar securities in the State "in which it then had the highest percentage of its admitted assets invested." Since securities which are included in the definition of Texas securities determine the investments which are favorable to tax reduction, a proper construction of the definition must heed the established rule that exemptions from taxation are not favored and will have doubts resolved against them. State Board of Insurance v. Southwest General Ins. Co., 401 S.W.2d 369 (Tex. Civ.App.1966, error ref., n. r. e.); Morris v. Lone Star Chapter No. 6, R. A. Masons, 68 Tex. 698, 5 S.W. 519 (1887); and cf. Hilltop Village, Inc., v. Kerrville Independent School District, 426 S.W.2d 943 (Tex.Sup.1968); and River Oaks Garden Club v. City of Houston, 370 S.W.2d 851

(Tex.Sup.1963). It is quite clear, as has been heretofore recognized, that the tax reducing provisions of Article 7064 were designed to encourage investments by insurance companies in properties of this State. Kansas City Title Ins. Co. v. Butler, 253 S.W.2d 318 (Tex.Civ.App.1952, writ ref., n. r. e.); Board of Insurance Commissioners v. Prudential Fire Ins. Co., 167 S.W.2d 578 (Tex.Civ.App.1942, writ ref); and cf. Kansas City Life Ins. Co. v. Love, 101 Tex. 531, 109 S.W. 863 (1908). This statutory purpose is furthered only if the property in which the funds of insurance companies are invested is Texas property in the sense of having originated in the State and having a direct and beneficial relationship to the domestic economy of the State. This is the common characteristic of the properties enumerated in the first five subdivisions of the definition of Texas securities. In our view, this is the intended meaning of the phrase "other property in this State." The statute premises tax reduction on a comparison between investments in Texas securities and investments in "similar securities" in the State in which it had invested its highest percentage of admitted assets. It is not believed that this contemplates a comparison between investments in federal securities, the paper evidences of which are located in the two states. It can be said that the provisions of the definition respecting United States government bonds purchased during World War II indicate the noninclusion of any other types of federal securities within the omnibus clause; but it can also be said that this specific provision indicates that the Legislature considered an investment in federal securities to be of sufficient importance to Texas to qualify as a tax reducing investment. In our view, however, no particular significance in either respect should be given this obviously patriotic and temporary measure. The omnibus clause is to be strictly construed, and for the reasons stated we hold that it does not convert Treasury bills of the United States government into Texas securities for tax reducing purposes.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Dissenting opinion by CALVERT, C. J., in which SMITH and WALKER, JJ., join.

REAVLEY, J., not sitting.

CALVERT, Chief Justice (dissenting).

I respectfully dissent.

As pointed out in the majority opinion, the question in this case is whether we should hold that, in enacting that part of Article 7064 described in the opinion as Article 7064(7), the Legislature meant what it said in plain language or what we think it meant to say. The true question thus posed is whether we should hold that the Legislature intended to say, "[f]or the purposes of this Act, Texas securities are defined as * * * (7) any other property in this State in which by law such insurance carriers may invest their funds," as the statute expressly provides, or should hold that the Legislature intended to say, "[f]or the purposes of this Act, Texas securities are defined as * * * (7) Texas property in the sense of having originated in the State and having a direct and beneficial relationship to the domestic economy of this State," as the majority expressly rewrites it.

As a basis for rewriting the statute, the majority holds, as it must, that the expression, "property in this State", is "not clear of ambiguity." How and wherein it is ambiguous is not indicated in the majority opinion. The word "property" can hardly be held to be ambiguous because it is expressly defined or explained. The "property" referred to is the "property * * * in which by law such insurance carriers may invest their funds." The property in which by law the insurance carriers may invest their funds is expressly itemized in Articles 2.08 and 2.10 of the Texas Insurance Code. There surely can be no ambiguity here.

But the statute further provides that to be a "Texas Security" the property must be "in this State." Perhaps it is in this expression that the majority finds ambiguity. A writing is not usually held to be ambiguous unless it is susceptible of more than one reasonable interpretation. Universal C.I.T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154 (1951). It seems to me that, in the context in which the phrase is used, it can have only one reasonable meaning and that is that the property be physically situated in this State. According to the interpretation of the majority, the property can be "in this State" although it is not physically located in this State and does not even have a taxable situs in this State. How property can be "in this State" when it is both physically and taxably out of this State, escapes me.

Apparently, what the majority is really saying is not that the phrase "property in this State" is ambiguous, but that the Legislature didn't mean to say what it said. We are reminded of the words used by our late-lamented associate, James R. Norvell, in Brazos River Authority v. City of Graham, 163 Tex. 167, 354 S.W.2d 99 (1961), at page 109, where, upon being urged to hold that the Legislature had really intended to use the word, "Chapter", instead of the word, "Title", in referring to a section of our statutes, he stated:

> "This brings to mind the maxim that 'If Parliament does not mean what it says, it must say so.' * * * If we were to approach the problem from the standpoint of the wisdom of the Legislature [sic] enactment, we could perhaps conclude that the Legislature may have had real property limitations only in mind. * * * We may not invade the legislative field. * * * 'The rule permitting departure from the literal meaning has no application at all where the statute is unambiguous and embodies a definite meaning and the intention of the legislature as expressed in the law is reasonably free from doubt.' 50 Am.Jur. 239, Statutes, § 241."

The rule thus announced in *City of Graham* was staunchly adhered to in spite of

the fact that the legislative history of the statute, as pointed out in the dissenting opinion of Justice Smith (354 S.W.2d 126–128), clearly indicated that the Legislature meant to use the word, "Chapter", rather than the word, "Title".

A responsible statement of the same rule of statutory interpretation is found in this Court's opinion in Simmons v. Arnim, 110 Tex. 309, 220 S.W. 66 (1920), at page 70, as follows:

"Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language, and not elsewhere. They are not the law-making body. They are not responsible for omissions in legislation. * * *"

Reverting to the facts of this case, the State argues that United States Treasury bills are not State securities but are Federal securities. What the State and the majority seem to overlook is that, for the purposes of Article 7064, or for that matter for any and all other purposes, the Legislature can define Texas securities as including Federal securities if it wishes so to do. That is exactly and precisely what it has done in Article 3.34, Texas Insurance Code, in defining and prescribing "Texas securities" in which life insurance companies are required by Article 3.33 to invest 75% of their "Texas Reserves". By the provisions of Article 3.34, the term, "Texas Securities", is defined as including "1. U. S. Bonds and Obligations," among which are "treasury bills". So it is that the Legislature by the so-called omnibus clause included as a Texas security in Article 7064, United States Treasury bills, "in this State," just as surely as if it had expressly said so. By the provisions of Article 2.08, Texas Insurance Code, respondent is authorized to invest in "[b]onds or other evidences of indebtedness of the United States of America * * *." By Article 7064(7), "Texas Securities", include, "any other property in this State" in which by Article 2.08 respondent was authorized to invest. The legal effect of reading the two statutes together is the same as if Article 7064(7) read, "any bonds or other evidences of indebtedness of the United States of America in this State."

I agree with the admonition that if the Legislature did not mean what it said in the omnibus clause of Article 7064, it, not this Court, should say so. I know of no constitutional provision which would preclude the Legislature from saying that, for Article 7064 purposes, Texas securities include "property in this State in which by law such insurance carriers may invest their funds," and thus include United States Treasury bills. I would also hold that the phrase, "in this State", means physical location in this State, would affirm the judgment of the Court of Civil Appeals, and would leave the rewriting of the omnibus clause to the Legislature.

SMITH and WALKER, JJ., join in this dissent.