**COMMISSIONER OF INSURANCE et al., Appellants,**

v.

**ALLSTATE INSURANCE COMPANY, Appellee.**

No. 12911.

Court of Civil Appeals of Texas, Austin.

March 28, 1979.

Rehearing Denied April 18, 1979.

John L. Hill, Atty. Gen., Catherine Brown Fryer, Asst. Atty. Gen., Austin, for appellants.

J. Chrys Dougherty, Graves, Dougherty, Hearon, Moody & Garwood, Austin, for appellee.

PHILLIPS, Chief Justice.

Allstate Insurance Company brought suit against the Commissioner of Insurance, the State Board of Insurance, the Attorney General, and the Treasurer of the State of Texas to recover taxes paid on gross premium receipts pursuant to Tex.Rev.Civ.Stat. Ann. art. 7064 (1960).

After trial to the court, judgment was rendered that Allstate recover the sum of over six million dollars, including interest, from the State for excess taxes on gross premiums paid by Allstate for the taxable years of 1972 and 1975.

We affirm the judgment.

The State is before us on a number of points of error which assert the error of the trial court in refusing to hold that Allstate was subject to the highest rate of tax permitted under the statute for gross premium tax returns filed by Allstate for the taxable years 1972 and 1975.

Article 7064 imposes an annual tax on the gross premiums collected by certain classes of insurance companies, of which appellee is one. The tax rate is determined by a formula which compares the investments of the company in "Texas securities" with investments in the "similar securities" of another state in which it does business. The tax is reduced by investments in Texas securities.

The background facts of this cause, briefly stated, are as follows. After audit of the Allstate tax return for 1972, the Commissioner of Insurance determined that Delaware, rather than California, as claimed by Allstate, was the correct comparison state, or state in which Allstate "had its highest percentage of admitted assets invested." Based upon the ratio of Texas securities to similar securities in the state of Delaware, the Commissioner determined that Allstate should be taxed at the highest rate, 3.85 percent, and that Allstate owed the State of Texas a substantial amount of additional gross premiums taxes. In addition, the Commissioner assessed a sizable penalty against Allstate. There then followed a series of discussions between the parties culminating in an order issued by the Commissioner of Insurance affirming that Allstate was liable for the additional tax and penalty. Allstate then requested, and was granted, a hearing before the State Board of Insurance; however, the Board denied the appeal and upheld the order issued by the Commissioner. Allstate initiated an appeal to the district court of Travis County pursuant to Article 1.04(f) of the Texas Insurance Code.

After audit of Allstate's 1975 gross premiums tax return, the Commissioner determined that Delaware, rather than Illinois, as claimed by the company, was the correct comparison state for 1975. Based upon the ratio of Texas securities to similar securities in the state of Delaware, the Commissioner determined that the applicable tax rate should be 3.85 percent and that Allstate owed the State of Texas an additional tax and penalty. Substantially the same administrative procedure was followed between the parties as with the 1972 tax with the same result. Allstate then amended its original petition in the district court to encompass its protest of the 1975 tax.

The first question for our determination is the proper construction of that part of Article 7064 which is as follows:

"Each such insurance organization shall also report to the Board of Insurance Commissioners . . . the amount that it had invested on the 31st of December, preceding, *in Texas securities* as defined herein and the amount that it had invested on said date *in similar securities* in the State *in which it had its highest percentage of admitted assets invested . . . .*" (Emphasis added).

This statute imposes an annual tax on fire and casualty insurance companies based on the gross premiums received from insurance on property or risks located in Texas. The basic tax rate is 3.85 percent of the gross premiums; however, the rate is reduced as the insurance company's investment in certain Texas properties, defined by the statute as Texas securities, rises above a certain percentage of its investments in similar securities in the state in which it had invested the most "admitted assets" (the comparison state). If the amount of Texas securities reaches the proper percentage of similar securities in the comparison state, the premium tax is reduced to 1.1 percent.

The State contends that in determining the actual state in which an insurance company has its highest percentage of admitted assets invested, the Board should look to the state in which the insurance company has the most similar securities. This is so because the Board considers the terms "admitted assets invested" and "Texas securities" (and therefore "similar securities") to be synonymous. The supervising tax analyst for the Board, and the person responsible for administering the Act, testified that she determines the state in which a company has its highest percentage of admitted assets invested as follows:

"We go through the list that we are provided; then we go through the annual statement itself and check the listings by the state of incorporation of each of the investments listed and determine first whether or not it is a Texas security or a similar security and then from there we fill in the state of domicile of each security."

The similar securities are then totaled, and the domicile state with the most similar securities is designated the state in which the taxpayer has the highest percentage of admitted assets invested.

Article 7064 defines Texas securities by listing various types of investments that qualify, as follows:

"For the purposes of this Act, Texas securities are defined as real estate in this State; *bonds of the State of Texas;* bonds or interest bearing warrants of any county, city, town, school district or any municipality or subdivision thereof which is now or may hereafter be constituted or organized and authorized to issue bonds or warrants under the Constitution and laws of this State; notes or bonds secured by mortgage or trust deed on property in this State insured by the Federal Housing Administrator; the cash deposits in regularly established national or state banks or trust companies in this State on the basis of average monthly balances throughout the calendar year; that percentage of such insurance company's investments in the bonds of ·the United States of America, that its Texas reserves for the unearned premiums and loss reserves as may be required by the Board of Insurance Commissioners, are of its total reserves; but this provision shall apply only to United States Government bonds purchased between December 8, 1941, and the termination of the war in which the United States is now engaged; *in any other property in this State in which by law such insurance carriers may invest their funds.*" (Emphasis added).

This suit involves an interpretation of the italicized omnibus clause.

■ Although the term similar securities is not defined in Article 7064, a similar security is generally understood to be the same as a Texas security except that it is located in another state. See *Kansas City Title Insurance Co. v. Butler,* 253 S.W.2d 318 (Tex.Civ.App.1952, writ ref'd n. r. e.).

The State contends that it is the policy of the State Board of Insurance to construe "in any other property in this State in

which by law such insurance carriers may invest their funds" to mean any property in which, under Texas law, insurance carriers may lawfully invest their funds.

From here the State points to Article 2.10 of the Texas Insurance Code contending that authorized investments include corporate stock, notes, and debentures and that such are considered to be similar securities under the omnibus clause cited above. The State contends that it has always been the policy of the State Board of Insurance to use the state of incorporation of the company issuing the stock as the *situs* of the stock. Therefore, stock in a Texas chartered corporation is a Texas security. Likewise, stock in a Delaware chartered corporation is a similar security in the state of Delaware.

The State's argument is basically that corporate stocks and bonds should be included in determining the comparison state, that is, the one in which Allstate "had the highest percentage of its admitted assets invested," and in computing the amount of Texas securities (and therefore similar securities). Such a construction of Article 7064 would result in an increase in the percentage of similar securities. This is true because appellants' interpretation of the statute would make Delaware the comparison state and Allstate owns a great many shares of stock of corporations chartered in Delaware.

We first will consider appellants' contention that corporate stocks and bonds are to be treated as admitted assets invested. Admitted assets are not defined by the statute, and we must look to their accepted meaning in the insurance field. It has been held that admitted assets are any *lawful* investments that are counted in determining solvency of an insurance company. See *Commonwealth Insurance Department v. Safeguard Mutual Insurance Co.*, 478 Pa. 592, 387 A.2d 647 (1978); *National Life Insurance Co. v. Haines*, 255 Pa. 599, 100 A. 517 (1917). See also 13A Appleman, *Insurance Law and Practice* § 7746, at 633 (1976). There is no doubt that Allstate's investments in stocks and bonds are lawful. Tex. Ins.Code Ann. art. 2.10, § 5 (1963).

■ We need not determine, however, whether corporate stocks and bonds do indeed qualify as admitted assets invested. Assuming *arguendo* that they do, we would still be faced with the issue of deciding the *situs* of the stocks and bonds for purposes of determining the comparison state. As a result of our holding *infra* concerning treatment of stocks and bonds as Texas securities and similar securities, it would make no difference whether the comparison state was Delaware, as appellants contend, or California and Illinois, as appellee argues. We do not believe that corporate stocks and bonds are to be treated as similar securities, and under this construction of the statute Allstate is entitled to the 1.1 percent lowest tax rate even with Delaware as the comparison state. Exclusion of stocks and bonds from the similar securities total for Delaware would result in a very low figure in proportion to the total of Texas securities. No matter which state was the comparison state, Allstate would still be entitled to the 1.1 percent tax rate.

■ As indicated previously, we hold that corporate stocks and bonds do not qualify as Texas securities, and thus necessarily not as similar securities either. Appellants seek to show that the three terms used in Article 7064, Texas securities, similar securities, and admitted assets invested, are all synonymous. If this were true, a conclusion that corporate stocks and bonds are admitted assets invested would automatically mean that the stocks and bonds are also similar securities. This Court held in a prior case that the terms are *not* synonymous; that premium notes were admitted assets but not Texas securities. *Commercial Standard Fire and Marine Co. v. Commissioner of Insurance*, 429 S.W.2d 930 (Tex.Civ.App.1968, no writ).

We have held in another earlier case that investment in stock of a corporation is not an investment "in any other property in this State in which by law such insurance carriers may invest their funds" as provided in the omnibus clause of Article 7064. *State Board of Insurance v. Southwest Gen-*

*eral Insurance Co.*, 401 S.W.2d 369 (Tex.Civ. App.1966, writ ref'd n. r. e.). In that case the corporation in which Southwest General had invested was chartered in Delaware, but its principal office and place of business was in Dallas. Virtually all its assets and property were in Texas. It was held the investment was not a Texas security. The Court did not consider whether or not the stock would qualify as a similar security in Delaware.

█ The Texas Supreme Court has stated that before an investment may qualify as a tax-reducing investment under the omnibus clause it must have "a direct and beneficial relationship to the domestic economy of the State." *State Board of Insurance v. Petroleum Casualty Co.*, 447 S.W.2d 666, 668 (Tex.1969).[1] Investment in the stock of a corporation whose only contact with a state is that it is the state of incorporation does not provide sufficient benefit to the economy of the state. "The omnibus clause is to be strictly construed" against increasing the number of tax-reducing securities. *Id.* at 668. As a result, Allstate's investments in corporate stocks and bonds should not be treated as similar securities.

We recognize that there are certain monetary benefits that accrue to the state of incorporation. See, e. g., Tex.Bus.Corp.Act Ann. art. 10.01 (Supp.1978) ($100.00 filing fee); Tex.Tax.–Gen.Ann. art. 12.01 (Supp. 1978) (franchise tax with a $55.00 minimum). These benefits are not, however, the sort of direct benefits that the legislature intended, or that flow from the investments specifically enumerated in Article 7064.

█ It is appellants' contention that the State Board of Insurance had a consistent administrative policy of including corporate stock within the omnibus clause. The State insists the departmental construction of the Act must be followed because of the long-standing agency policy. In this case we are controlled by the cited case law rather than policy of the agency. A departmental interpretation may not be followed when contrary to the unambiguous words of the statute. *Citizens National Bank of Paris, Illinois v. Calvert*, 527 S.W.2d 175 (Tex.1975).

To restate the conclusion of the Court, we find it unnecessary to decide whether or not Delaware is the comparison state because, excluding stocks and bonds as similar securities, appellee still prevails. Delaware is left with virtually no similar securities. Thus appellee has the bulk of its assets as Texas securities if Texas is compared to Delaware. In order for the State to have prevailed it must have shown that Delaware was not only the comparison state but also that corporate stocks and bonds qualified as similar securities there. Allstate could have satisfied its burden by either showing California and Illinois were the comparison states or by showing that stocks and bonds were not similar securities. We hold that Allstate satisfied its burden by proving the latter.

The judgment of the trial court is affirmed.

---

1. In that case the Supreme Court refused to consider U.S. Treasury bills as tax-reducing investments.