**TEACHER RETIREMENT SYSTEM OF TEXAS, Appellant,**

v.

**Bert COTTRELL, Appellee.**

No. 12848.

Court of Civil Appeals of Texas, Austin.

June 20, 1979.

Rehearing Denied July 11, 1979.

John L. Hill, Atty. Gen., Harry C. Green, Asst. Atty. Gen., Austin, for appellant.

John W. Alvis, Alvis & Carssow, Austin, for appellee.

SHANNON, Justice.

This is an appeal from a judgment of the district court of Travis County that set aside an order entered by the Board of Trustees of the Teacher Retirement System of Texas. The Board's order denied Bert Cottrell's application for purchase of credit for out of state teaching service pursuant to Tex.Educ.Code Ann. § 3.26(a) (1972). We will affirm the judgment of the district court.

At the time Cottrell applied to the Board to purchase credit for his out of state teaching, § 3.26(a) provided as follows:

"Any member of the retirement system who has been employed as a teacher or as an auxiliary employee in any public school system maintained in whole or in part by any state or territory of the United States or by the United States for children of United States citizens may purchase equivalent membership service credits under this retirement system for such service." Tex.Laws 1975, ch. 19, § 3.26(a), at 37.

The facts are not in dispute. From June, 1950, until June, 1953, Cottrell was an instructor of chemistry in the Department of Physics and Chemistry at the United States Military Academy at West Point. The United States Military Academy is a fully accredited institution granting academic degrees at the undergraduate level. During Cottrell's tenure as instructor at West Point, he was a commissioned officer in the United States Air Force assigned to West Point where he taught cadets on a full-time basis.

Following the termination of his duties as instructor at West Point and his separation from the Air Force, Cottrell became a member of the Teacher Retirement System of Texas. In January, 1977, Cottrell completed ten years of service in Texas as a member of the Retirement System, and became eligible to purchase membership service credits to which he was entitled under the Retirement System. Prior to his application for out of state teaching service credit, Cottrell purchased five years of creditable service for active military duty as authorized by Tex.Educ.Code Ann. § 3.23(c). Those five years of credit covered time other than that spent in teaching at West Point. Cottrell, pursuant to § 3.26(a), applied to the Board for the right to purchase membership service credits for his three years of out of state teaching at West Point. The administrative agency applied the law to the undisputed facts and determined to deny Cottrell's application.

The district court entered judgment reciting " . . . the order made by the Board of Trustees of the Teacher Retirement System of Texas denying [Cottrell's] application for purchase of credit for out of state teaching pursuant to Education Code Section 3.26, is in violation of the said statute . . ." The judgment of the district court overturned the order of the Board and ordered the Board to approve Cottrell's application for purchase of credits for out of state service.

The Retirement System attacks the judgment by one point of error: "The trial court erred in holding that the order of the [Retirement System] denying [Cottrell's]

application for purchase of credit for out of state teaching pursuant to § 3.26 of the Texas Education Code was in violation of said statute."

■ It should be noticed initially that the Board's decision, upon undisputed facts, that Cottrell was not entitled to purchase credit pursuant to § 3.26(a) is a conclusion of law. Unlike a determination of disputed fact, an administrative determination of a question of law is not entitled to a presumption of validity. Neither the district court nor this Court is bound by the Board's construction of § 3.26(a). *Social Security Board v. Nierotko,* 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718 (1945); *Board of Adjustment v. Underwood,* 332 S.W.2d 583 (Tex. Civ.App.1960, writ ref'd n. r. e.); *Commissioner of Insurance v. Allstate Insurance Company,* 579 S.W.2d 553 (Tex.Civ.App. Austin 1979) (writ pending).

■ Under its point of error the Retirement System argues primarily that Cottrell was not entitled to purchase credit for out of state teaching service pursuant to § 3.26(a) because he was not a teacher and because the Military Academy is not part of any public school system.

Cottrell qualifies under the plain wording of § 3.26(a), as it read at the time of his application, as (1) a teacher (2) employed in a public school system maintained by the United States (3) for children of United States citizens.

From 1950 to 1953 Cottrell taught chemistry in the Department of Physics and Chemistry at the Military Academy. That Cottrell was an officer does not mean that he was not a teacher any more than the fact that he was a teacher means that he was not an officer. When Cottrell taught at West Point, he was both a teacher and an officer. Cottrell's responsibilities as an instructor in chemistry at West Point were no different from the responsibilities of such a position in any college or university in the country except, as noted by counsel, ". . . his students were, perhaps,

brighter than most and undoubtedly sat up straighter in their seats." At the time of Cottrell's application to the Retirement System, nothing in § 3.26(a) excluded from eligibility for purchase of credits a member of the military forces of the United States who taught at a public school and was compensated by the United States Government.

The Military Academy is part of a "public school system." The United States Government, of course, does not maintain the comprehensive type of school system that each of the states does. The Government, nevertheless, does maintain "systems" of schools. Considering only the Department of Defense, there are, in addition to the Military Academy, the Naval Academy, the Coast Guard Academy, and the Air Force Academy. In addition, the Department of Defense maintains schools overseas for the general education of military dependents. The Military Academy functions as a public college. It is, of course, supported by the United States Government. That the Academy's primary responsibility is to train persons to become officers in the United States Army does not make it any less a public educational institution. Students at the Academy attend without charge for room, board, tuition, and medical care. Admission is open to all those who meet the qualifications, one of which is United States citizenship.

It is of interest that effective June, 1977, § 3.26(a) was amended to exclude from out of state service credit, ". . . service [performed by one] while a member of the Armed Forces rendered at any public school, for which service the member was compensated by the United States." Under the terms of the amended statute, Cottrell would not be eligible to purchase credit for his teaching stint at the Military Academy.

The Supreme Court has recognized the presumption that the legislature in adopting an amendment intends to make some change in the existing law. *American Surety Co. of New York v. Axtell Co.,* 120

Tex. 166, 36 S.W.2d 715 (1931). Applying that presumption to this case, the amendment of § 3.26(a) is support for our view that the statute, as it existed prior to amendment, allowed credit for teaching at a public school by one who was in the military service and was compensated by the United States Government.

■ The Retirement System also argues under its point of error that the provisions of § 3.26(a) are not applicable to teaching time performed by one on active duty for the reason that purchase of credit for active military duty is allowed pursuant to the provisions of § 3.23(c). Section 3.23(c) permitted persons who performed military duty prior to becoming members of the Retirement System to purchase credit for up to five years of time spent in military service. As noticed previously, Cottrell purchased five years of creditable service for his military duty pursuant to § 3.23(c). The five years of credit purchased covered time other than that spent by Cottrell in teaching at the Military Academy.

No language in § 3.26(a), prior to amendment, indicated a legislative intent to bar a person otherwise qualified for credit pursuant to § 3.26(a) because he also could qualify under § 3.23(c). Section 3.23(c) probably reflected the intent of the legislature to recognize in this context the value to society of service in the military. On the other hand, § 3.26(a) was most probably an expression of legislative purpose to encourage experienced teachers to come to Texas and remain here. In Cottrell's case, both legislative purposes were served. We know of no reason in law to bar him from purchase of credit under § 3.26(a).

The judgment is affirmed.

O'QUINN, Justice, dissenting.

Because I am in complete disagreement with the results reached by the majority, I file this dissent and set out my reasons for disagreeing.

From two administrative determinations, in April of 1977, Cottrell appealed by way of petition to the executive secretary of the Teacher Retirement System requesting that the two earlier decisions be overruled. In August of 1977 the executive secretary in effect affirmed the earlier administrative actions in his decision which in pertinent part stated:

"1. The USMA is not a public school maintained in whole or in part for 'children of United States citizens' . . .

"2. The USMA is not a public school system maintained in whole or in part by any other state or territory of the United States. It is a military school maintained to educate and train future military officers . . .

"3. * * * [Under Attorney General Opinion H–945 and Section 3.23] the Board of Trustees has not by 'rule or regulation' found that a member who has taught at a United States military service academy is eligible to purchase out-of-state teaching service credits under section 3.26 of the Texas Education Code.

"4. The Petitioner was not a teacher or auxiliary employee in a public school system as defined in section 3.02(3) [3.02(a)(3)] while an Air Force officer assigned to the USMA. He was primarily an Air Force officer subject to assignment by the Air Force.

"Decision. Petitioner is not eligible to purchase creditable service toward retirement with the Teacher Retirement System of Texas for service rendered at the U.S. Military Academy under Section 3.26, Texas Education Code. The service would be eligible as military duty and creditable under Section 3.23(c), Texas Education Code subject to five years limitation on such military duty."

From decision of the executive secretary, Cottrell appealed to the Board of Trustees of the Teacher Retirement System. The Board in September of 1977 adopted the decision of the executive secretary and stated, "Petitioner's request to purchase out-of-state credit service for the period in which he, as a military officer, was assigned to

service as an instructor at the United States Military Academy is denied."

Cottrell on appeal argues (1) that under an opinion of the attorney general, filed in 1977, his application to purchase additional credit under Section 3.26 would be proper, and (2) that an Act passed by the Legislature a few months after Cottrell filed his application, which would not affect Cottrell's rights, amended the law to prevent future grants of the type of credit sought in this suit.

The Legislature amended Section 3.26(a) effective June 1, 1977, by adding: "Specifically excluded from out-of-state service credit is service while a member of the Armed Forces rendered at a public school, for which service the member was compensated by the United States."

For reasons more fully developed below, I am persuaded that the opinion, which Cottrell urges is controlling, fails to give the relief sought in this case. The attorney general's opinion relied on began with the condition: "If a person has been determined to be eligible under both sections 3.23 and 3.26. . . ." The opinion thereafter recognized that "Certainly, there are numerous types of fact situations which are encompassed in your questions, and the determination of whether a particular situation falls within the statute involves a determination of fact. The Legislature, in this case, has specifically delegated the authority to make such fact determinations to the State Board of Trustees of the Teacher Retirement System in section 3.23. . ." The opinion is not controlling in the instant case because the Board here has merely exercised its delegated authority to determine that Cottrell is not entitled to purchase credits under Section 3.26(a).

Cottrell's second argument springs from amendment of the statute specifically to exclude the purchase of the type of credits sought here for out of state service.

As will be demonstrated in greater detail, I believe there are other principles of statutory construction applicable to this case which operated to justify the Board's exclusion of the purchase of such credits even prior to the specific exclusion of these credits under terms of the amendment.

The first reason the Retirement System should prevail in this cause is that the initial determination of eligibility to purchase retirement credits is properly a question to be resolved by the System. As mentioned above, the attorney general's opinion Cottrell relies on stated, "The Legislature . . has specifically delegated the authority to make such fact determinations [of whether a particular situation falls within the statute] to the State Board of Trustees of the Teacher Retirement System. . . ."

The opinion then continued: "In view of the foregoing, we cannot say as a matter of law that a member of the military employed as a teacher in a United States Armed Forces service academy . . . is or is not eligible under section 3.26 to purchase membership service credits." It is also observed that Section 3.02(b) declares "In case of doubt the State Board of Trustees of the retirement system shall determine whether a person is an employee within the contemplation of this chapter." Education Code, Section 3.02(b) (Supp.1979).

The Administrative Procedure and Texas Register Act provides that "Where the law authorizes review under the substantial evidence rule, or where the law does not define the scope of judicial review, the court may not substitute its judgment for that of the agency as to the weight of the evidence on questions committed to agency discretion . . . ." Article 6252–13a, § 19(e) (Supp. 1979).

Prior to the Procedure Act, "If . . . the meaning of the provision be doubtful or ambiguous, the construction placed upon a statutory provision by the agency charged with its administration is entitled to weight. . . ." Ex parte Roloff, 510 S.W.2d 913, 915 (Tex.1974); Calvert v. Kadane, 427 S.W.2d 605, 608 (Tex.1968); Lloyd A. Fry Roofing Co. v. State, 541 S.W.2d 639, 644

(Tex.Civ.App.Dallas 1976, writ ref'd n. r. e.); *Heard v. City of Dallas,* 456 S.W.2d 440, 443–444 (Tex.Civ.App.Dallas 1970, writ ref'd n. r. e.).

One court stated, " . . . whether the meaning of the provisions of an act is unclear the interpretation given them by the administrative agency charged with its implementation is entitled to *great weight.* . . ." *Beckendorff, et al. v. Harris-Galveston Coastal Subsidence District,* 558 S.W.2d 75, 82 (Tex.Civ.App.Houston (14th Dist.) 1977, writ ref'd n. r. e., opinion approved, 563 S.W.2d 239); see also, *Tarry Moving & Storage Co. v. Railroad Commission,* 359 S.W.2d 62, 67 (Tex.Civ.App.Austin 1962, aff'd, 367 S.W.2d 322). (Emphasis added in *Beckendorff*).

I believe that the Board of Trustees of the Teacher Retirement System in denying Cottrell's application merely exercised the authority delegated to the Board to determine whether the applicant was covered by the respective sections of the statute. Cottrell was permitted to purchase five years of credit under Section 3.23, but was denied the right to purchase an additional three years under Section 3.26(a). In this respect the Board has determined that Cottrell's application for the additional credits was not within the contemplation of the legislature because (1) the military academy—West Point—is not a public school, and (2) an officer teaching at the military academy is rendering military service under assignment by the military, rather than primarily performing teaching duties as contemplated under the Act.

On the public school question, the Retirement System's view was expressly conveyed to Cottrell by letter in this language:

"Both the Texas Legislature and the United States Congress normally use the term 'public school' according to its generally accepted meaning: public tax-supported elementary and secondary schools and state universities. . . . That Congress does not contemplate the Academy as a 'public school' or element of public education is shown by the fact that Title 20 (Education) covers teachers, students, and elementary and secondary education without mention of the Academy which is covered by Title 10 (Armed Forces). Teaching at USMA is not service in a 'public school' as contemplated by Section 3.26(a)."

To those authorities and definitions, the System might have added the generally recognized authority of Webster: *"public school* . . . In the United States . . an elementary or secondary school, now usually free, maintained by the local governmental authority." *Webster's New International Dictionary of the English Language,* 2nd ed., unabridged.

The letter from the System to Cottrell also stated that the System construed teaching at the United States Military Academy, while on active duty in the service, to be military duty rather than out of state teaching service. Each of the determinations by the Board was well within the authority of the Board, as recognized in the attorney general's opinion, and as delegated to the Board under Sections 3.02(b) and 3.23(a).

Returning to the amendment of the statute, I examine the effect to be found in it upon the facts of this case. Cottrell urges that the amendment added in 1977 must be recognized as an intended change in the law, coming too late to bar approval of his application.

Statutory amendments are not necessarily and in all instances intended changes in the law. Some amendments may be construed as legislative interpretation of the former or existing law. And, in case of an inconsistency between a general rule and a particular rule, the particular rule may be construed properly as an exception to the general rule.

Although Texas Jurisprudence recognizes a general rule, relating to construction of amendments to a statute, that "In enacting an amendment, the legislature is presumed

934

to have intended to change the law, and a construction should be adopted that gives effect to the intended change, *rather than one that renders the amendment useless,*" yet recognition is also accorded the rule that, " . . . *an amendment may constitute a legislative interpretation of the law,* that is entitled to much weight." (Emphasis added). 53 Tex.Jur.2d *Statutes,* Secs. 187, 178 (1964).

The Commission of Appeals in 1926 stated, "While this amendment . . . [to an existing statute] cannot affect the litigation in the present controversy, yet it is a legislative interpretation of the act amended . . ." *Creager v. Hidalgo County Water Improvement District No. 4,* 283 S.W. 151, 153 (Tex.Comm'n App.1926, opinion adopted). This Court in 1961 wrote, "We believe that it is proper for this Court to use an Amendatory Act to arrive at the intention of the Legislature in a previous Act." *Calvert v. Audio Center, Inc.,* 346 S.W.2d 420, 423 (Tex.Civ.App.Austin 1961, writ ref'd n. r. e.).

If this rule of construction be followed, we should give effect to the amendment as a legislative means of clarifying and making more specific terms of the Act being amended. Giving effect to what we consider the manifest purpose of the law making body, I contend the amendment merely made explicit what the Legislature had intended to be part of the original Act. *Wright v. State,* 71 S.W.2d 352 (Tex.Civ. App.Austin 1934, no writ).

An additional rule of construction, which favors the position of the Retirement System, has been stated in this language: " . . . where one section of an act prescribes a general rule which, without qualification, would embrace an entire class of subjects, and another section prescribes a different rule for individual subjects of the same class, the latter will be construed as an exception to the general rule." 53 Tex. Jur.2d *Statutes,* sec. 143 (1964). The rule has been followed, for example, by this Court in *Trinity Universal Insurance Company v. McLaughlin,* 373 S.W.2d 66, 69 (Tex. Civ.App.Austin 1963, rehearing denied, 373 S.W.2d 350, no writ). See also *Town of Highland Park v. Marshall,* 235 S.W.2d 658, 663 (Tex.Civ.App.Dallas 1950, writ ref'd n. r. e.).

The Supreme Court explained the rule in this language in *Lufkin v. City of Galveston,* 63 Tex. 437, 439 (1885):

"It is a cardinal rule in the construction of constitutions and statutes that the whole instrument must be taken together—and the whole scheme had in view by the law-making power must be understood and carried out; and where there are apparent conflicts or inconsistencies between different parts of the instrument, that construction must be adopted which will give effect to every part, rather that that which will render any portion nugatory and of no avail.

"As a natural result of this principle, it follows that where in one section a general rule is prescribed, which without qualification would embrace an entire class of subjects, and in another section a different rule is prescribed for individual subjects of the same class, the latter must be construed as exceptions to the general rule, and be governed by the section which is applicable to them alone."

Under this analysis, Section 3.26 of the Education Code must be read as stating the general rule. Prior to the amendment in 1977, Section 3.26(a) read as follows:

"(a) Any member of the retirement system who has been employed as a teacher or as an auxiliary employee in any public school system maintained in whole or in part by any other state or territory of the United States or by the United States for children of United States citizens may purchase equivalent membership service credits under this retirement system for such service." (Acts 1975, 64th Leg., p. 37, ch. 19, § 2, effective March 20, 1975).

Pursuing the same analysis, Section 3.23(c) would be read as the inconsistent

particular rule which should be construed as an exception to the general rule found in Section 3.26. As it applied in April of 1975, Section 3.23(c) read as follows:

"Any member who perform[s] one or more years of military duty prior to becoming a member of the retirement system shall be permitted to deposit to his individual account in the member savings account for each year of such military duty, *but not to exceed five years*, an amount equal to his deposits made with the retirement system during the first full year of service as a teacher or auxiliary employee after becoming a member of the retirement system. He shall then be entitled to one year of membership service credit for each year of military duty." (Emphasis added). (Acts 1975, 64th Leg., p. 122, ch. 57, § 2, effective April 18, 1975).

The denial of Cottrell's application was grounded in part upon application of this principle, as evidenced by the following excerpt from the letter by which the director of member benefits explained to Cottrell the reasons for disallowing purchase of credit for three years of teaching at the military academy, in addition to the maximum five years previously allowed for military service:

"Since the essential characteristic of instruction at the service academies is military duty, its crediting under TRS should be governed exclusively by Sec. 3.23 of the Texas Education Code. The legislature has made ample provision for crediting military duty. The provisions of Sec. 3.26 are intended to deal with persons who are essentially career teachers but who have not rendered all their service in the Texas public schools. This does not accurately describe the instructors at the service academies who are members of the Armed Forces."

It is my conclusion that, for the several reasons already stated, the Teacher Retirement System, acting through its administrative processes in considering the application of Cottrell, correctly exercised the discretion delegated to the System in denying the application, and that the order of the Board of Trustees should be sustained. It appears to me that the result reached by the majority simply permits Cottrell to obtain *eight* years of credit for his military service instead of the maximum of *five* years plainly fixed by the Legislature.