# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00722-CV

**United American Insurance Company, Appellant**

**v.**

**Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas and Greg Abbott, Attorney General of the State of Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. 99-06836, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## O P I N I O N

This case requires us to determine whether participation in a limited partnership that holds mineral interests qualifies as Areal property, or any interest therein@ for the purpose of insurance premium tax benefits conferred by article 4.11 of the Texas Insurance Code. Tex. Ins. Code Ann. art. 4.11, ' 4(a)(8) (West Supp. 2003) (hereinafter article 4.11). United American Insurance Co. brought a declaratory judgment action against the Texas Comptroller, Carole Keeton Strayhorn, and the Texas Attorney General, Greg Abbott (collectively Athe comptroller@), seeking a determination that its interest in various limited partnerships qualified for the tax benefits at issue. *See* Tex. Civ. Prac. & Rem. Code Ann. '' 37.001-.011 (West 1997); Tex. Tax Code Ann. '' 112.051-.060 (West 2002). The trial court granted summary judgment to the comptroller, and we will affirm that determination.

**BACKGROUND**

Texas law imposes a premium tax on all insurance companies. *See* Tex. Ins. Code Ann. art. 4.11, ' 1 (West Supp. 2003). If a foreign insurance company maintains certain investments in Texas, it may be entitled to a lower tax rate. *See id.* '' 5-5E. To determine this tax benefit, a foreign insurer must demonstrate that it owns a certain ratio of Texas investments to investments in a comparison state.[1] *E.g.*, *id.* art. 4.11, ' 5B (1991 premium tax rate reduced from 2.3% to 1.85%, if Texas investments valued at 90% of comparison state investments, to 1.4% if Texas investments valued at more than 100% of comparison state investments).[2] The Texas investments germane to this appeal are corporate stocks and bonds, *id.* art. 4.11, ' 4(a)(4), and Areal property, or any interest therein.@[3] *Id.* art. 4.11, ' 4(a)(8).

---

[1]     The Acomparison state@ is the state other than Texas in which a carrier owns the largest amount of similar investments to those qualified and enumerated in article 4.11, section 4. Tex. Ins. Code Ann. art. 4.11, ' 2(b) (West Supp. 2003).

[2]     In 1989, in response to a lawsuit brought by out-of-state insurers, the legislature changed the premium tax to phase out the allocation procedure and adopt a flat premium tax rate by 1995. *See generally* Tex. Ins. Code Ann. art. 4.11, '' 5-5F (West Supp. 2003); *see also* House Research Organization, *Daily House Floor Reports*, May 17, 1989, ' 1, HB 1954.

[3]     The full list includes: U.S. bonds, mortgage loans, state and municipal bonds, corporate

stocks and other obligations, deposits in financial institutions, policy loans, collateral loans, and real property.  Tex. Ins. Code Ann. art. 4.11, ' 4 (West Supp. 2003).

This dispute requires us to determine whether certain assets qualify as Texas assets for the purpose of calculating tax rates under article 4.11. United American is a Delaware insurance company with principal offices in McKinney, Texas. United American owns participations in limited partnerships formed to own and exploit Texas mineral resources. Although it is not clear from the record, it appears that these partnerships primarily hold fractional interests in various oil and gas properties.[4] On its premium tax returns beginning in 1987, United American consistently listed these partnership interests as corporate stocks, bonds, or other obligations, qualifying as Texas investments under article 4.11.

In 1999, the comptroller completed an audit of United American's premium tax returns for prior years beginning in 1990. *See* Tex. Ins. Code Ann. art. 4.05 (West Supp. 2003). The comptroller determined that the limited partnership interests did not qualify as Texas investments under article 4.11.

---

[4] In 1983, United American reported an investment of more than $4.5 million in "Oil and Gas Producing Properties." Those interests were reported as being held through a limited partnership arrangement in 1984. In 1985, the mineral interests were turned over to a corporation, Torch Co., in which United American held corporate stock. The corporation was dissolved and the mineral interests conveyed to a Texas limited partnership in 1987. At all times relevant to this dispute, each of the properties at issue was held in the form of a limited partnership in which United American was the limited partner.

One of the limited partnership agreements contained in the record indicates that the mineral "properties" to be held by the partnership included:

> properties (or interests in properties) producing oil and gas in commercial quantities, properties (or interests in properties) with shut-in wells capable of producing oil and gas in commercial quantities or properties adjacent to such properties which are acquired incidental to the acquisition of such properties. The term also includes well machinery and equipment, gathering systems, transportation systems, storage facilities or processing, and other installations or other equipment and property associated with the production of oil or gas.

4

Accordingly, the comptroller assessed an additional $1,270,365.98 in premium taxes, interest, and penalty

for underpayments occurring between 1990 and 1995.[5]

---

[5] As of 1995, the premium tax rate has been reduced to a flat rate, regardless of an insurance company=s investments. *See* Tex. Ins. Code Ann. art. 4.11, ' 5F.

United American appealed to the comptroller and paid the full amount under protest. After the comptroller denied the appeal, United American sought a declaration that its limited partnership interests should have been considered Texas assets for the purposes of article 4.11.[6] The comptroller responded that, because partnership interests do not constitute real property under Texas law generally, article 4.11 cannot, based on its plain language, be extended to include partnership interests in real property. The trial court found that article 4.11 did not include limited partnership interests in mineral producing properties and granted the comptroller=s traditional summary judgment motion. *See* Tex. R. Civ. P. 166a(c). This appeal ensued.

## DISCUSSION

We review the grant of a traditional motion for summary judgment *de novo.* The movant has the burden to show that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)); Tex. R. Civ. P. 166a(c). In this case, if article 4.11 unambiguously prevents United American from counting its limited partnership interests as a Texas investment, we will affirm. *See Sharp v. Caterpillar, Inc.*, 932 S.W.2d 230, 234 (Tex. App.CAustin 1996, no writ) (construction of tax statute on summary judgment is question of law).

---

[6] United American also argues that certain summary judgment evidence offered by the comptroller was improperly admitted and that its declaratory judgment action should not have been dismissed.

**6**

In construing the scope of article 4.11, we are to ascertain the legislature=s intent in enacting the statute and to effectuate that intent. *See Union Bankers Ins. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994). Article 4.11 is a tax deduction statute. *See State Bd. of Ins. v. Petroleum Cas. Co.*, 447 S.W.2d 666, 668 (Tex. 1969) (determining situs of U.S. treasury certificates for purposes of article 4.11=s predecessor statute). Tax deductions are a matter of legislative discretion. *See Upjohn Co. v. Rylander*, 38 S.W.3d 600, 607 (Tex. App.CAustin 2000, pet. denied). Their provisions must be strictly construed. *See, e.g.*, *Morris v. Lone Star Ch. No. 6*, 5 S.W. 519, 520 (Tex. 1887). Our task is to determine the scope of article 4.11, section 4(a)(8). We do so by examining the language used in the statute. *See In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 380 (Tex. 1998). Every word, phrase, and expression should be read as if it were deliberately chosen for a purpose. *See Upjohn*, 38 S.W.3d at 607; *State v. Evangelical Lutheran Good Samaritan Soc=y*, 981 S.W.2d 509, 511 (Tex. App.CAustin 1998, no pet.).

United American argues that Areal property, or any interest therein@ includes interests in limited partnerships formed to hold mineral-producing real estate. Under Texas law, partnership interests are not real property, but personal property. *See* Tex. Rev. Civ. Stat. Ann. art 6132b, ' 5.02 (West Supp. 2003).[7] Real property held by a partnership is property of the partnership; the partners have no individual interest in the partnership property. *See Humphrey v. Bullock*, 666 S.W.2d 586, 590 (Tex. App.CAustin

---

[7] Although the revised partnership act was adopted in 1993, section 5.02 carries on former section 26=s provision that partnership interests comprise personal, and not real, property. *See* Act of May 16, 1961, 57th Leg., R.S., ch. 158, ' 26, 1961 Tex. Gen. Laws 289, 297, *superseded by* Act of June 19, 1993, 73d Leg., R.S., ch. 917, ' 1, 1993 Tex. Gen. Laws 3887, 3899 (codified at Tex. Rev. Civ. Stat. Ann. art. 6132b, ' 5.02 (West Supp. 2003)).

1984, writ ref=d n.r.e.) (absent controlling partnership wind-up agreement, mineral interests held by general partnership defined as personal, rather than real, property for purposes of probate code).  United American argues, however, that article 4.11 applies both to real property that is directly held by an insurance company *and* to any investment that constitutes an interest in real property.  *See also* Tex. Ins. Code Ann. art. 4.11, ' 4(d) (standard for calculating value of real property and any interest in real property for purposes of section (a)(8)).  Because the partnerships own oil and gas properties, United American argues that its participation in those partnerships constitutes an interest in real property for the purposes of the premium tax rate calculation.

To bolster its argument, United American urges us to construe article 4.11 in light of article 3.33, which regulates the types of investments insurance companies are permitted to make in Texas assets. *See* Tex. Ins. Code Ann. art. 3.33 (West Supp. 2003) (AAuthorized Investments and Loans for Capital Stock Domestic Life, Health and Accident Insurance Companies@).  These regulations apply to foreign insurance company investments in Texas, as well as domestic insurance company investments generally.  *Id.* art. 3.41.  The list of permitted investments includes, among other things, international bonds, savings deposit funds, and various pooled investment arrangements.  *See generally id.* art. 3.33.  Insurance companies are authorized to invest in real estate, including their office buildings, improved land, and mineral reserves.  *See id.* art. 3.33, ' 4(*l*) (real estate), (m) (oil, gas, and minerals).  Insurance companies may hold Texas assets in their own name or through participations in limited partnerships and joint ventures.  *Id.* art. 3.33, ' 7(e). Before 1997, those limited partnerships and joint ventures could only be entered into for the purposes of managing real estate loans, owning real estate, or owning and exploiting oil, gas, and minerals.

8

Act of April 9, 1985, 69th Leg., R.S., ch. 36, ' 1, 1985 Tex. Gen. Laws 411, 416-17, *superseded by* Act of May 19, 1997, 75th Leg., R.S., ch. 556, ' 6, 1997 Tex. Gen. Laws 1958, 1976. Insurance companies must maintain reasonable, adequate, and accurate evidence of their ownership of their assets and investments. Tex. Ins. Code Ann. art. 3.33, ' 7(b) (West Supp. 2003).

United American asserts that article 4.11 is intended to induce foreign insurance companies to invest in assets that will benefit the Texas economy. It argues that the legislature has specifically provided that insurance companies may invest in limited partnerships for the purpose of owning real estate and mineral estates. According to United American, article 4.11 merely provides for the allocation of the various investments provided for by article 3.33 between Texas and other states for purposes of calculating premium tax rates. United American contends that, because article 3.33 specifically provides that insurance companies may hold real property through partnership agreements, article 4.11 refers to those partnership agreements when it allows for premium tax benefits for Aany interest@in real property. Any other reading of the statute, United American concludes, would render the language Aor any interest therein@meaningless.

The comptroller responds that Areal property, or any interest therein@means land and every other legal interest in land, including the various possible leaseholds, licenses, and mineral estates. The comptroller argues that because article 4.11 is a tax exemption statute it must be strictly construed according to its explicit terms. According to the comptroller, United American=s interpretation of article 4.11 would extend Texas asset status not only to real property, but also to *personal property* that is to some degree related to real property.

The comptroller argues that article 3.33 has no effect on our interpretation of article 4.11 because, while article 3.33 is part of a set of provisions mandating minimum solvency requirements for insurance providers, article 4.11 is part of the scheme for taxing those insurance providers. Chapter three of the insurance code governs ALife, Health and Accident Insurance.@ *See* Tex. Ins. Code Ann. arts. 3.01-3.97-3 (West 1981 & Supp. 2003). Article 3.33 permits insurance companies to invest in real estate and mineral properties, but only under certain circumstances and as a limited percentage of their overall investment. *See id.* art. 3.33, ' 4(m) (mineral property interests may only be held as investment for production of income), art. 3.40 (insurance companies may only own income producing interests in mineral estates to amount of 10% of its admitted assets). By contrast, chapter four of the insurance code deals with taxation of insurance companies. *See* Tex. Ins. Code Ann. arts. 4.01-4.74 (West 1981 & Supp. 2003). Insurance companies are assessed a premium tax as a percentage of their gross premiums. *Id.* art. 4.11, '' 5-5F. Under article 4.11, a foreign insurance company may bear a lower tax burden if it owns property designated as a Texas investment. *Id.*

The comptroller asserts that article 4.11 must be read on its own terms, because it is a tax exemption statute drafted to name particular assets that qualify for a lower tax rate rather than a reflection of the investments an insurance company may make under article 3.33. The comptroller argues that in chapter four of the insurance code the legislature has routinely distinguished between real property and personal property. *See, e.g.*, Tex. Ins. Code Ann. art. 4.01 (Areal estate and tangible *personal property@*, Aall other *personal property@*); art. 4.01(b) (all intangible or tangible *personal property*); art. 4.01(c) (Aall other *personal property@*) (emphasis added). The comptroller takes the position that the legislature would have

referred to personal property if it intended for limited partnership interests to qualify as Texas assets for the purpose of calculating premium tax rates under article 4.11. The comptroller concludes that extending the scope of article 4.11 would violate the legislature=s express designation of a narrow tax exemption.

We agree with the comptroller that we must construe article 4.11 without regard to article 3.33 and that, because article 4.11 is a tax exemption statute, we must strictly construe its terms. The 1951 insurance code allowed a premium tax rate benefit for all real estate in Texas acquired according to the provisions of chapter three of the code. Act of June 28, 1951, 52d Leg., R.S., ch. 491, 1951 Tex. Gen. Laws 868, 895 (current version at Tex. Ins. Code Ann. art. 4.11). In 1984, the legislature moved the definitional provision to article 4.11 and removed any reference to chapter three. *See* Act of July 13, 1984, 68th Leg., 2d C.S., ch. 31, art. 4, ' 1, 1984 Tex. Gen. Laws 215 (codified at Tex. Ins. Code Ann. art. 4.11).[8] There is no statutory indication in article 4.11 that the two articles are to be read together. Because

---

[8] Historically, the comparative premium tax rate provision has given foreign insurers a reduced premium tax if they maintained a certain percentage of their assets in Aproperty in this State@ as defined by a separate statutory provision. *See Board of Ins. Comm=rs v. Prudential Fire Ins. Co.* 167 S.W.2d 578,

article 4.11 is a tax exemption statute and must be strictly construed, we decline to link its interpretation with the provisions of article 3.33.

The assets listed in article 4.11 are all items that must be held in direct ownership by the foreign insurance company applying for beneficial tax treatment. Several of those items constitute intangible personal property that can only be owned directly by an insurance company. *E.g.*, Tex. Ins. Code Ann. art. 4.11, ' 4(a)(1) (U.S. Bonds), (2) (mortgage loans held by insurance company), (3) (state and local government bonds), (5) (bank deposits and loans). The provision at issue, by contrast, provides tax benefits for ownership of *real property. Id.* ' 4(a)(8). The limited partnership participations involved in

---

578-79 (Tex. Civ. App.CAustin 1943, writ refused) (benefit derived from investment in Texas property offset decreased tax rate). The 1951 Insurance Code allowed a premium tax rate benefit for all real estate acquired according to the provisions of chapter three. *See* Act of June 28, 1951, 52d Leg., R.S., ch. 491, 1951 Tex. Gen. Laws 868, 895 (current version at Tex. Ins. Code Ann. art. 4.11). In 1963, this was amended explicitly to apply to Aall *real estate* situated in this state . . . *owned and held by* such insurance company in accordance with the provisions of [chapter three].@ Act of June 17, 1961, 57th Leg., R.S., ch. 411, 1961 Tex. Gen. Laws 933, 935 (emphasis added) (current version at Tex. Ins. Code Ann. art. 4.11 (West Supp. 2003)); *see also* Tex. Ins. Code Ann. art. 3.40, ' 5 (West 1981) (allowing insurance companies to hold real estate and various mineral estates). However, when article 3.34 was incorporated into article 4.11 in 1985, the present list of eligible assets was adopted and all reference to the definitions of real property in chapter three were removed. *See* Act of July 13, 1984, 68th Leg., 2d C.S., ch. 31, art. 4, ' 1, 1984 Tex. Gen. Laws 215 (codified at Tex. Ins. Code Ann. art. 4.11).

this case are *personal property*, not real property. Furthermore, the real property at issue is *owned by the limited partnerships*, not by the insurance company. As the comptroller argues, if the legislature had intended for article 4.11 to apply to limited partnership interests, it could have indicated that both real property *and personal property related to oil and gas production* would be accounted Texas assets for premium tax rate purposes. We conclude that article 4.11 does not extend to interests in limited partnerships.

Because we hold that article 4.11 does not as a matter of law include mineral interests held through limited partnerships, we overrule United American=s issue.[9]

## CONCLUSION

The judgment of the trial court is affirmed.

Mack Kidd, Justice

Before Justices Kidd, Yeakel and Puryear

Affirmed

Filed: May 22, 2003

---

[9] Because we believe that the comptroller=s interpretation of article 4.11 is correct as a matter of law, we will not address United American=s various issues regarding the burden of proof on its own motion for summary judgment.